LUJAN AGUIGUI & PEREZ LLP
300 Pacific News Building
238 Archbishop Flores Street
Hagåtña, Guam 96910
Telephone   (671) 477-8064
Facsimile   (671) 477-5297

*Attorneys for Max S. Mendiola*

FILED
DISTRICT COURT OF GUAM
FEB - 2 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    -vs-<br><br>MAX S. MENDIOLA,<br><br>        Defendant. | CRIMINAL CASE NO. 04-00056<br><br>DEFENDANT'S RESPONSE TO PRESENTENCE INVESTIGATION REPORT |

## GUIDELINES ADVISORY ONLY, BASE OFFENSE LEVEL SHOULD BE RECALCULATED

As the Probation Officer appropriately notes in ¶ 36 of the Presentence Investigation Report (PSR), the United States Sentencing Guidelines (USSG) are only advisory and non-binding upon the sentencing Judge. *United States v. Booker* (2004), 125 S. Ct. 738, 757-757. By striking down provisions of the federal sentencing statute, *Booker* allows the sentencing court to consider the Guidelines while tailoring a sentence in light of other relevant concerns.

The Defendant, in accordance with his acceptance of responsibility, acknowledges that the PSR sets out a generally accurate record of facts related to this prosecution.

Nonetheless, there are issues that warrant a recalculation of the base Offense Level of 30 and the reduction granted the Defendant for his acceptance of responsibility.

# BASE OFFENSE LEVEL SHOULD BE RECALCULATED

The PSR at ¶ 37, concludes that the Defendant's Base Offense Level should be 30. This conclusion is based on the premise that the Defendant "possessed a total net weight of 47.47 grams of methamphetamine hydrochloride (actual).

The net weight calculation is computed in ¶ 31 of the PSR. A review of that table reflects that the drugs seized at the time of the Defendant's arrest amounted to 5.872 grams of d-methamphetamine (ice) and 41.6 grams of *l*-methamphetamine.

Under § 2D1.1 of the USSG, Note (C) of the Notes to the Drug Quantity Table provides that "'ice,' for the purposes of this guideline, means a mixture or substance containing **d-methamphetamine hydrochloride** of at least 80% purity." [Emphasis supplied.]

From the Defendant's Plea Agreement, it is clear that the government was concerned with the "ice" issue. At ¶ 4 it states, "[T]he government must prove each of the following elements beyond a reasonable doubt:   <u>First</u>, the defendant knowingly attempted to possess methamphetamine hydrochloride (ice)." At ¶ 5(c) it states, "Defendant caused a friend in the Philippines to send him a package containing approximately 30 grams gross weight of methamphetamine hydrochloride (ice); the net weight of the ice was more than five (5) grams."

The placing of the Defendant at Level 30 is inconsistent with that guideline. It provides, in relevant part, that level 30 is applicable for

- At least 350 G but less than 500 G of Methamphetamine, or at least 35 G but less than 50 G of Methamphetamine (actual) or **at least 35 G but less than 50 G of "Ice."** [Emphasis supplied.]

The more appropriate Base Offense Level is 26. It applies when the prohibited drug falls within the following range:

- At least 50 G but less than 200 G of Methamphetamine, or at lest 5 G but less than 20 G of Methamphetamine (actual), or **at least 5 G but less than 20 G of "Ice."** Emphasis supplied.]

*USA vs. Max S. Mendiola*
Criminal Case No. 04-00056
Defendant's Response to Presentence Investigation Report

2

Case 1:04-cr-00056   Document 31   Filed 02/02/2006   Page 2 of 5

The Defendant recognizes that use of Base Offense Level 26 would essentially disregard the fact that he also possessed *l*-methamphetamine, but submits that the conclusion is the result of the fact that Note (C) of the Notes to the Drug Quantity Table requires this conclusion.

In support of this position, the Defendant notes that even the Drug Enforcement Administration, in a Microgram Bulletin published in November 2003 and found at **www.usdoj.gov/dea/programs/forensices/microgram/mg1103/mg1103.html**, noted that "[t]he literature suggests that d-methamphetamine is between five and ten times more potent than the *l*-isomer; however, this does not correspond to differences in efficacy or abuse potential, since abusers can compensate merely by taking more of the *l*-isomer." The second clause of the quoted material is a conclusion not supported by any cited data.

The Defendant also recognizes that the USSG were amended in 1995 in an attempt to eliminate the then-existing difference in Offense Level between d- and *l*-methamphetamine. See U.S. Sentencing Guidelines Manual § 2.D1.1 (1995); *Johnson v. United States*, 362 F.3d 636, 637 (9th Cir. 2004). Nonetheless, the retention of Note (C) in the Notes to the Drug Quantity Table appears to require that an ice-related offense is calculated as specified therein.

The greater quantity of the methamphetamine was of the *l*-variety and thus far less potent than the d-version. Although not granting a downward departure under the circumstances of the case, the court in *United States v. Mikaelian*, 168 F.3d 380, 385 (9th Cir. 1999) "[a]greed that the low purity of heroin involved in a crime cannot be categorically excluded as a basis for a downward departure."

In light of the *Booker* decision, this Court may distinguish between the two different types of methamphetamine involved and the fact that the Guidelines remain ambiguous on this issue because of the specific definition given for "ice."

*USA vs. Max S. Mendiola*
Criminal Case No. 04-00056
Defendant's Response to Presentence Investigation Report

3

# DEFENDANT'S ACCEPTANCE OF RESPONSIBILITY WARRANTS 3-LEVEL DOWNWARD DEPARTURE

The PSR at ¶ 35 acknowledges that the Defendant has accepted responsibility for his criminal act and that he should be accorded a decrease in his Offense Level pursuant to § 3E1.1 of the USSG. At ¶ 43 the PSR allows the Defendant at 2-level reduction because "[t]he Government has not indicated if defendant warrants an additional one level decrease pursuant to § 3E1.1."

If the Defendant has cooperated with the government to the extent required by his Plea Agreement—and the Defendant submits that he has fully cooperated—then the government must make his level of cooperation known to the Court prior to his sentencing [Plea Agreement, ¶ 2(b)] and "recommend that defendant receive the statutory minimum, or the minimum term of incarceration recommended by the Sentencing Guidelines, whichever is greater." [Plea Agreement, ¶ 3(b).]

The minimum statutory term, at noted at ¶ 3 of the Plea Agreement, is five years and the Guidelines sentence as calculated by the Defendant is a range of 70-97 months, making the latter the appropriate range for incarceration. This is in contrast to the 121-151 months suggested at ¶ 82 of the PSR

# RELEASE PENDING DESIGNATION AND SELF-REPORTING REQUESTED

Upon sentencing and pending designation to a facility of the Bureau of Prisons, the Defendant respectfully requests that he be released to Hae-Un Kim, his former spouse, as his third party custodian. Although the Defendant and Ms Kim were divorced in 1991, they remain on good terms and she has expressed her willingness to have the Defendant stay with her until the BOP determines where he is to be incarcerated.

Upon a facility being designated, the Defendant requests that he be accorded the privilege of self-surrender. The Defendant understands that if granted this privilege, he would be responsible for paying for his own transportation to the facility that is designated by the BOP.

*USA vs. Max S. Mendiola* 4
Criminal Case No. 04-00056
Defendant's Response to Presentence Investigation Report

Case 1:04-cr-00056   Document 31   Filed 02/02/2006   Page 4 of 5

The Defendant also asks that the Court recommend that, if convenient to the BOP, that he be incarcerated at the Federal Prison Camp at Lompoc CA or the Federal Prison Camp at Sheridan OR. The Defendant is a certified welder and his mechanical skills could be usefully employed on the farms operated at the FPCs.

## CONCLUSION

The Defendant respectfully submits that his Base Offense Level be set at 26, that he be given a 3-level reduction for acceptance of responsibility. If these recommendations are granted, and taking into consideration the 2-level upward departure the PSR included under USSG 2D1.1(b)(4), his Offense Level should be 25. With a Criminal History Category of III, the appropriate sentencing range is 70-87 months. Given the Government's commitment at ¶ 3(b) of the Plea Agreement to recommend the "statutory minimum, or the minimum term of incarceration recommended by the Sentencing Guidelines, whichever is greater," and the fact that the mandatory minimum for the offense is five years, the appropriate sentence would be 70 months.

Dated this 2nd day of February, 2006.

LUJAN AGUIGUI & PEREZ LLP

By: *[signature]*

PETER C. PEREZ, ESQ.
*Counsel for Max S. Mendiola*

*USA vs. Max S. Mendiola*
Criminal Case No. 04-00056
Defendant's Response to Presentence Investigation Report
5

Case 1:04-cr-00056   Document 31   Filed 02/02/2006   Page 5 of 5